UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNETTE LEWIS,

    Plaintiff,

v.

WATSON PHARMA, INC.,

    Defendant.
_____/

Case No. 1:11-cv-241

HON. JANET T. NEFF

## OPINION

Plaintiff Lynette Lewis sued Defendant Watson Pharma, Inc., her former employer, alleging gender discrimination. Now pending before the Court is Defendant's Motion for Summary Judgment (Dkt 54). Plaintiff filed a tardy response in opposition to the motion (Dkt 58),[1] and Defendant filed a reply (Dkt 57). After careful consideration, the Court concludes that Defendant's motion is properly granted for the reasons that follow.[2]

### I. BACKGROUND

Defendant (hereinafter sometimes "the Company") and its parent and affiliates, develop, manufacture, market, sell and distribute a comprehensive array of generic and specialty brand

---

[1]The Court, while under no obligation to consider Plaintiff's tardy response brief (*see* Op. & Order, Dkt 52), determines that even if Plaintiff had timely filed her brief, she has not submitted sufficient evidence to survive Defendant's motion for summary judgment.

[2]The Court, within its discretion, decides the motion without oral argument. *See* W.D. Mich. LCivR 7.2(d).

pharmaceutical products (Dkt 56, Df.'s Statement of Material Fact [SMF][3] ¶ 1). On December 22, 2004, Defendant hired Plaintiff to work as a pharmaceutical sales representative, and Plaintiff began working in that position on January 3, 2005 (*id.* ¶ 2). The pharmaceutical sales representative position required Plaintiff to generate sales of specific pharmaceutical products to physicians and other health care providers in her assigned territory in West Michigan (*id.* ¶ 3).

In April 2009, Defendant began to sell a new urology drug named Rapaflo (SMF ¶ 21). Plaintiff and the other pharmaceutical sales representatives who reported to James Kazmaier in Michigan, Wisconsin and Ohio became responsible for generating sales of the urology products Trelstar and Rapalfo (*id.* ¶ 22). Defendant used a national leader board to track the monthly sales of Rapaflo generated by Plaintiff and its other pharmaceutical sales representatives (*id.* ¶ 23). Defendant required its regional managers to complete performance reviews and a standard "Field Contact Report" to review the performance of each of their sales representatives when they accompanied the representatives on field visits (*id.* ¶ 24). Regional managers used the forms to praise good performance, compare sales and call numbers to assigned goals, and provide feedback for ways in which the representatives could improve their performance (*id.*).

In the June 2009 Field Contact Report, Kazmaier noted that as of the week ending June 5, 2009, Plaintiff ranked 96 out of 106 total sales representatives in nationwide sales of Rapaflo (SMF ¶ 27). Also in June 2009, Kazmaier issued a written discipline to Aaron Evans, a male sales representative in Wisconsin who reported to him (*id.* ¶ 41). In the July 2009 Field Contact Report, Kazmaier noted that as of the week ending July 3, 2009, Plaintiff ranked 103 out of 106 total sales

---

[3]Unless otherwise noted, the Court has cited to the material facts stated by Defendant that Plaintiff did not dispute in her corresponding response (Dkt 58).

representatives in nationwide sales of Rapaflo, and Kazmaier warned Plaintiff that she had to immediately improve her work performance (*id.* ¶ 32).

In the September 2009 Field Contact Report, Kazmaier noted that as of the week ending September 4, 2009, Plaintiff ranked 102 out of 106 total sales representatives in nationwide sales of Rapaflo and outlined several "action items" (SMF ¶¶ 37-38). On September 25, 2009,[4] Kazmaier issued Plaintiff a Written Warning based on her continued low call activity and poor sales of Rapaflo (*id.* ¶ 40). Kazmaier indicated that he would reassess Plaintiff's performance with respect to Rapaflo on October 26, 2009 (Dkt 54-2, Kazmaier Dep. at 85).

Plaintiff alleges that the September 25, 2009 warning was not signed; that Kazmaier did not deliver it to her until October 2, 2009; that he promised Plaintiff that he would re-write the warning; that Rapoflo was overpriced and competed against Flomax, a successful and less expensive pharmaceutical that would soon be priced as a generic drug; that it was not possible for Plaintiff to achieve the demanded improvement and the warning was designed to assure her termination for an alleged non-discriminatory cause; and that although Kazmaier promised "to help in any way that I can," Kazmaier ignored Plaintiff's email and voice mail messages after October 2, 2009 (Amend. Compl. ¶ 14(a)-(f)).

In December 2009, Defendant's then-acting Vice President of Sales and Sales Operations Lynne Amato determined that the Company had to realign its sales force to better support its product line and sales strategy (SMF ¶ 44). That realignment resulted in a nationwide reduction of the

---

[4]Although Defendant's undisputed statement of fact indicates that the Written Warning was issued on "September 25, 2012" (Dkt 56 at 8), the Written Warning attached as Exhibit P (as well as the context of the other factual statements) clearly establishes that the Written Warning was issued on September 25, 2009.

Company's sales force from 291 sales representatives to 275 sales representatives (*id.* ¶ 45). The position elimination process was based on the objective criteria of (1) geographic region; (2) written disciplinary action related to performance within the preceding year; and (3) review of the most recent performance evaluations (*id.* ¶ 46). Defendant considered each of its sales representatives for the reduction in force pursuant to the above-referenced criteria. (*id.* ¶ 47). Human Resources Manager Sally Cummings managed the position elimination process (*id.* ¶ 48). Defendant used the above-referenced criteria to "automatically" eliminate the positions held by Plaintiff and Evans as part of the nationwide realignment because both had received written performance-based warnings during 2009 (*id.* ¶ 49). The effective date for the termination of Plaintiff's employment with Defendant was December 31, 2009 (*id.* ¶ 50).

Plaintiff initiated this lawsuit on March 11, 2011.[5] Plaintiff, a married female and the mother of two young children, alleges that she was a victim of Kazmaier's gender discrimination, including:

- a. His statements that, "I'd rather have a young single guy instead of mothers because men can work 24 hours a day."

- b. His statement that, "If it were up to me, I'd rather have a team of single men because they work hard, don't have kids to worry about, and they're 100% job."

- c. He replaced plaintiff with a male sales representative who had an unsatisfactory work record.

- d. He assigned males to larger territories and/or territories with better performing pharmaceuticals.

- e. He retained male sales representatives with low sales performance.

---

[5]Plaintiff initially named only Watson Pharmaceuticals as a defendant (Dkt 1). She filed an Amended Complaint on March 30, 2011 to add Watson Pharma, Inc. and Watson Laboratories, Inc. as defendants (Dkt 3). On May 3, 2011, the parties stipulated to dismissing Watson Pharmaceuticals and Watson Laboratories, leaving Watson Pharma, Inc. as the only named defendant (Dkt 6).

  f. He retained his own position despite . . . the low performance of his region.

  g. He did not place low performing males on performance improvement plans.

(Amend. Compl. ¶¶ 12-13). Plaintiff alleges gender discrimination under Title VII (Count I) and Michigan's Civil Rights Act (CRA) (Count II).

Following discovery, this Court conducted a Pre-Motion Conference in May 2012 on Defendant's proposed dispositive motion. The parties attempted mediation in October 2012 that was ultimately unsuccessful, necessitating briefing and resolution of this dispositive motion.

## II. ANALYSIS

**A. Motion Standard**

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.* In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Slusher,* 540 F.3d at 453. "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

**B.	Discussion**

Plaintiff presents her discrimination claim under both federal and state law. Title VII provides that it shall be unlawful for an employer to discriminate against any individual with respect to the individual's "compensation, terms, conditions or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e-2(a)(1). Similarly, Michigan's CRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... sex ...." MICH. COMP. LAWS § 37.2202(1)(a).

"'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). A plaintiff must offer "direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Suits v. The Heil Co.*, 192 F. App'x 399, 400 (6th Cir. 2006) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).

**1.	*Direct Evidence***

Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). For her proffered direct evidence, Plaintiff relies on a statement by Kazmaier, purportedly made to her on two occasions, that "he preferred to work with young, single men as opposed to moms because the men have the ability to work 24 hours" (Dkt 58, Pl. SMF ¶ 66; Dkt 54-1, Pl. Dep. at 55). According to Plaintiff, the first time Kazmaier made the statement was during the April 2009 field contact and

the second time was only three days before he wrote the September 2009 warning (Dkt 54-1, Pl. Dep. at 55, 63, 73, 82-83). Plaintiff concedes that no one else witnessed the purported comments to her, although Plaintiff asserts that she was told that Kazmaier made a similar sexist statement to another female sales representative, Kelly Ryan, and to Evans, the male sales representative who also received a written performance-based warning (*id.* ¶ 67; Dkt 54-1, Pl. Dep. at 103-04, 128, 146, 149). Plaintiff does not contend that anyone else employed by Defendant discriminated against her (Dkt 54-1, Pl. Dep. at 52-53, 124-26).

As a threshold matter, as Defendant point outs in its Reply (Dkt 57 at 8), Plaintiff cannot rely on the hearsay statements of other employees to whom Kazmaier purportedly made the same sexist remark as direct evidence of discrimination. *See* FED. R. EVID. 602; *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001) ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

As for the comments Kazmaier made to Plaintiff, Defendant argues that these comments (even if made) do not constitute direct evidence of sex discrimination where "it is undisputed Mr. Kazmaier had no involvement or input in the decision to realign Watson's sales force or to eliminate Plaintiff's position as part of that realignment" (Dkt 54 at 23). Plaintiff responds that Defendant cannot insulate itself from Kazmaier's sexism by asserting that Vice President Amato and human resources manager Cummings were the decision-makers who terminated Plaintiff, especially in this case where she was "automatically" terminated based on receipt of a written disciplinary action from Kazmaier (Dkt 58 at 15).

"'[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ...' of demonstrating

animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); *see also Phelps v. Jones Plastic & Eng'g Corp.*, 20 F. App'x 352 (6th Cir. 2001) (relying on *Bush*). "Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision." *Price Waterhouse,* 490 U.S. at 251. *See also Suits*, 192 F. App'x at 403 ("[t]o prevail based on direct evidence, plaintiff must show that the defendant employer acted on its discriminatory animus, not just that it possessed one").

A plaintiff can show discrimination by offering evidence of a "causal nexus" between the ultimate decisionmaker's decision to terminate the plaintiff and the supervisor's discriminatory animus. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350-51 (6th Cir. 2012) (quoting *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008)). Specifically, "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and that if that act is a proximate cause of the ultimate employment action, then the employer is liable under the [Act]." *Staub v. Proctor Hosp.*, ___ U.S. ___; 131 S. Ct. 1186, 1194 (2011) (emphasis in original).

Defendant has supported its summary judgment motion by presenting Kazmaier's testimony that when he included the phrase on the September 2009 warning that Plaintiff's failure to improve her performance "will lead to further disciplinary action up to and including termination," Kazmaier did not have "any information" that the warning would "automatically" result in termination (Dkt 54-2, Kazmaier Dep. at 96-97, 112). Defendant has also provided the testimony of Vice President

Amato, who similarly testified that in the fall of 2009, only herself, the Company president, and the Human Resources team were privy to the reorganization plans (Dkt 54-2, Amato Dep. at 21-24).

Plaintiff bears the burden of going beyond the contents of her pleadings to set forth specific facts that indicate the existence of an issue to be litigated. However, Plaintiff has not presented any evidence that supports a causal nexus between Kazmaier's warning and her subsequent termination. Relying on *DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir. 2004), Plaintiff argues that the mere temporal proximity of Kazmaier's second remark and his September 2009 warning is sufficient to create a genuine issue of material fact (Dkt 58 at 15). Although *DiCarlo* addresses temporal proximity, the temporal proximity considered was between a decision maker's remarks and a termination decision. *DiCarlo* therefore does not support Plaintiff's burden to show a causal connection between the remarks of Kazmaier, a non-decision maker, and her termination.

Indeed, the Sixth Circuit Court of Appeals in *DiCarlo* reiterated the point that comments made by individuals who are not involved in the decision-making process regarding a plaintiff's employment do *not* constitute direct evidence of discrimination. *See DiCarlo*, 358 F.3d at 416 (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) ("comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination"); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (comments by manager lacking any involvement in the decision-making process do not constitute direct evidence)).

In short, Plaintiff has not offered direct evidence of a discriminatory motive to terminate her employment.

**2.      Circumstantial Evidence**

Absent direct evidence, a plaintiff may attempt to prove a prima facie case using circumstantial evidence. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If the plaintiff successfully proves a prima facie case, then the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *Ondricko*, 689 F.3d at 653 (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521-22 (Mich. 2001)). Once the employer carries this burden, the burden of production shifts back to the plaintiff to show that the legitimate reasons offered by the employer were not its true reasons, but rather were pretext for unlawful discrimination. *Id.* Here, even assuming arguendo that Plaintiff's evidence allows an inference of discriminatory treatment, she has not refuted the legitimate, nondiscriminatory reason articulated by Defendant to justify its adverse employment action.

The defendant in a reduction-in-force case must offer a non-discriminatory reason "'why someone else was preferred.'" *Taylor v. Union Inst.*, 30 F. App'x 443, 448 (6th Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "[T]he defendant bears only the burden of production, not the burden of persuasion, in that the defendant must merely 'articulate a valid rationale' for the adverse employment action." *Id.* (quoting *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)). Defendant specifies that Plaintiff was terminated because of her poor work performance (Dkt 54 at 26). Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment. *See Imwalle v. Reliance Medical Prods.*, 515 F.3d 531, 546 (6th Cir. 2003).

A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Regardless of which option is used, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (alteration in original) (internal quotation marks and citation omitted). Plaintiff contends that she has shown pretext through her prior high evaluations, that a male employee replaced her, and evidence that Kazmaier set "impossible goals for her" (Dkt 58 at 21).

Plaintiff's prior evaluations, even if accurately characterized as "high," do not demonstrate that the proffered legitimate, nondiscriminatory reason has no basis in fact where Defendant's 2009 reduction-in-force decisions were based on written disciplinary action related to performance "within the preceding year" and review of "the most recent performance evaluations" (SMF ¶ 46). Similarly, as Defendant points out, there is no evidence that the written discipline was insufficient to warrant termination or constituted a pretext for gender discrimination where Plaintiff does not contest either the underlying sales data or the written discipline Kazmaier issued to a similarly low-performing male employee during the same period of time (Dkt 54 at 28).

Defendant contends that Plaintiff's bald assertion that she was replaced with a male sales representative ignores the only admissible evidence relating to the issue: its answer to Plaintiff's interrogatory stating that Defendant reassigned the accounts Plaintiff handled in 2009 to a combination of male and female sales representatives in 2010 (Dkt 57 at 11, citing Ex. C,

11

Interrogatory No. 15). Plaintiff's evidence includes an undated job posting (attached to her response at Dkt 58-2), which does not alone create a genuine issue of material fact that Defendant was motivated to terminate her because of her gender. Alternatively, she also claims that her job duties were assumed by two male sales representatives, "either Rich Felber ... or Kyle White" (Dkt 58 at 6, ¶ 54). In support of the Felber proposition, Plaintiff references only her own unsupported statement during her deposition that "Rich Felber replaced me" (Dkt 54-1, Pl. Dep. at 129). In support of the proposition that she was replaced by White, she references Vice President Amato's deposition testimony; however, neither the question posed to Amato nor Amato's answer support Plaintiff's factual assertion:

> Q. So to your fairest recollection the person who was saving [the] Grand Rapids territory when it came to Rapaflo would have been Kyle White?
>
> A. I think so, but I am not a hundred percent certain.

(Dkt 54-2, Amato Dep. at 10).

"It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (quoting *Anderson*, 477 U.S. at 257; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Here, the record, taken as a whole and viewed in the light most favorable to Plaintiff, would not allow a reasonable jury to disbelieve the reason given for Plaintiff's termination and infer that Plaintiff was instead terminated because of her gender. Plaintiff has simply not submitted sufficient evidence to survive Defendant's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt 54) is granted.

An Order and corresponding Judgment will be entered consistent with this Opinion.


DATED: March 26, 2013                      /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge